**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RAFAEL GOMEZ and HECTOR MARQUEZ,

Plaintiffs,

-against-

CITY OF NEW YORK, LAWRENCE THOMAS, Individually, GREGORY DANCA, Individually, and JOHN DOE 1 through 5, Individually, (the names John Doe being fictitious, as the true names are presently unknown),

Defendants.

**COMPLAINT**

16-CV-2377

**JURY TRIAL DEMANDED**

---

Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ, by their attorney, The Trainor Law Firm, P.C., complaining of the defendants, respectfully allege as follows:

## PRELIMINARY STATEMENT

1.     Plaintiffs bring this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of their civil rights, which are secured by these statutes and the United States Constitution.

## JURISDICTION

2.     Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

3.     This Court has jurisdiction to hear all claims in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

4.     Venue is properly laid in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because this is the District in which the claim arose.

## JURY DEMAND

5.      Plaintiffs respectfully demand a trial by jury on all issues in this matter pursuant to Federal Rule of Civil Procedure 38(b).

## PARTIES

6.      Plaintiff RAFAEL GOMEZ is a twenty-one (21) year old male of Hispanic origins and a United States Citizen who resides in Middlesex County, New Jersey.

7.      Plaintiff HECTOR MARQUEZ is a twenty (20) year old male of Hispanic origins and a United States Citizen who resides in Middlesex County, New Jersey.

8.      Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9.      Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the CITY OF NEW YORK.

10.     At all times hereinafter mentioned, the individually named defendant, LAWRENCE THOMAS (Shield No. 23859), was a duly sworn police officer of the NYPD, and was acting under the supervision of the NYPD and according to his official duties.

11.     At all times hereinafter mentioned, the individually named defendant, GREGORY DANCA (Shield No. 20062), was a duly sworn police officer of the NYPD, and was acting under the supervision of the NYPD and according to his official duties.

12.     At all times hereinafter mentioned, the individually named defendants, JOHN DOE 1 through 5 (Shield Nos. unknown), were duly sworn police officers of the NYPD, and were acting under the supervision of the NYPD and according to their official duties.

2

13.     At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York and/or the CITY OF NEW YORK.

14.     Each and all of the defendants' acts alleged herein were done by these defendants while acting within the scope of their employment with Defendant CITY OF NEW YORK.

## FACTS

15.     On June 7, 2015, between 3:30 a.m. and 4:30 a.m., Plaintiff RAFAEL GOMEZ ("Mr. Gomez") and Plaintiff HECTOR MARQUEZ ("Mr. Marquez") were lawfully present in the vicinity of Post Avenue and West 207th Street, New York, New York, when Defendants Lawrence Thomas, Gregory Danca, and John Doe 1 through 5, without any lawful justification whatsoever, unlawfully arrested them, searched them, illegally assaulted them, and imprisoned them.

16.     Before, during, and after the defendants arrested and assaulted them, Mr. Gomez and Mr. Marquez committed no crime or offense.  Likewise, at all times relevant to these events, Mr. Gomez and Mr. Marquez were not behaving in a manner that would suggest to any reasonable police officer that they had done anything unlawful.

17.     Mr. Gomez is a 21-year old Hispanic male, a high school graduate from Monroe Township High School, who played high school football, and who, prior to the events giving rise to this lawsuit, has never been arrested.

18.     Mr. Gomez is currently enrolled in Middlesex Community College, where he will soon earn his Associates Degree in Chemistry.  From there, he intends to matriculate in a four-year university to obtain his Bachelors Degree in Chemistry, so that he can then go to pharmacy

3

school.

19.     Mr. Gomez is also a full-time New Jersey-certified Pharmacy Technician at CVS, where he began working as a stock boy, at 16-years old, and rose through the hierarchy to become a Pharmacy Technician.

20.     Mr. Marquez is a 20-year old Hispanic male, a high school graduate from Monroe Township High School, who has completed a semester of college at Brookdale Community College.

21.     Mr. Marquez is employed full time as a salesman at Richard Catena Auto Wholesalers in Teterboro, New Jersey, and works along side his father.

22.     On June 6, 2015, Mr. Gomez had completed a 10-hour shift as a Pharmacy Technician at Walmart, in Freehold, New Jersey, where he was then-employed, in addition to his employment with CVS.   He began work at approximately 9:00 a.m. and finished work at approximately 7:30 p.m.  Upon ending his workday, Mr. Gomez went home, where he lives with his father, mother, and sister.

23.     While Mr. Gomez was home, Mr. Marquez called him and invited him to celebrate their friend Joden Durant's birthday at a club in New York, and Mr. Gomez agreed to go.

24.     Mr. Gomez and Mr. Marquez, along with their friend Joden Durant ("Mr. Durant"), went to the club in New York, and arrived there at approximately 11:00 p.m.

25.     Mr. Gomez, Mr. Marquez, and Mr. Durant left the club, at approximately 3:00 a.m., to go home to New Jersey.  At this point, it was June 7, 2015.

26.     As they were driving home, in Mr. Marquez's SUV, they encountered slow-moving traffic. They also observed what appeared to be another club (unrelated to the club they

had left) in the vicinity and NYPD vehicles in the area.

27.     As they waited in Mr. Marquez's vehicle at a red light, a man whom they believed to be intoxicated came up to the vehicle and uttered something to them.

28.     Fearing for his safety, Mr. Marquez rolled up his window, which was rolled down up until that point.  As the light turned green and they were about to drive away, they then heard a loud shattering noise, and observed that Mr. Marquez's rear passenger-side window was shattered.

29.     They then pulled over Mr. Marquez's vehicle, and observed that there was an NYPD vehicle next to them.  Mr. Durant stayed in the vehicle, and Mr. Gomez and Mr. Marquez exited the vehicle and approached the first NYPD officer they saw and explained to the officer that a man just broke Mr. Marquez's SUV's window, and that they wanted to file a police report.

30.     This NYPD officer told them, in substance, to "give him a second," but then walked away and did not come back.

31.     Mr. Gomez and Mr. Marquez then approached another NYPD officer and explained to him that someone broke Mr. Marquez's vehicle's window, and that they wanted to file a police report.  This officer also blew them off.

32.     Then, Mr. Gomez and Mr. Marquez approached a third NYPD officer to explain what had happened to Mr. Marquez's SUV. Mr. Marquez informed this officer that a man approached his vehicle, said something, and then his vehicle's rear window shattered.

33.     As Mr. Marquez was explaining what had happened, Defendant John Doe 1, an African-American NYPD officer in plain clothes, grabbed Mr. Marquez's arms and pushed him against the metal gate of a closed store.

34.     Defendant John Doe 1 then illegally searched Mr. Marquez's pockets and, upon

finding nothing, let go of Mr. Marquez and announced that, "He's good."

35.     Likewise, as Mr. Marquez was being harassed, a uniformed NYPD officer, upon information and belief, Defendant Lawrence Thomas, came from behind Mr. Gomez, patted him down, and then rear-handcuffed him.

36.     Mr. Gomez asked why he was being arrested, and Defendant Thomas kept saying that, "You're resisting?!?" In response, Mr. Gomez, who was fully compliant with Defendant Thomas's unlawful arrest of him, kept saying that he was not resisting but that he did not understand why he was being arrested.

37.     Thereafter, Defendant Thomas pulled Mr. Gomez approximately 10 feet away, kept telling him that he was resisting, and then grabbed Mr. Gomez's arm, which was already handcuffed, causing Mr. Gomez to trip and fall onto the concrete ground and land on his shoulder and chest.

38.     Thereafter, Defendant Thomas and another Defendant John Doe started kicking Mr. Gomez while he was on the floor.

39.     Mr. Gomez pleaded with the defendants to stop hitting him, and they eventually stopped.

40.     At the same time that Mr. Gomez was being unlawfully arrested and assaulted, upon information and belief, Defendant Gregory Danca grabbed Mr. Marquez's arms and pushed him hard against a metal gate, and yelled at him to "Stop resisting!" even though Mr. Marquez was fully compliant with him and was in no way resisting this surprise onslaught. This was the second time that Mr. Marquez was pushed against the metal gate without any lawful justification.

41.     Defendant Danca then rear-handcuffed Mr. Marquez, while other NYPD officers were yelling, "Bring out the Taser!," compounding Mr. Marquez's fear of further assault.

42.     As Mr. Marquez was handcuffed and held against the gate, Mr. Gomez remained on the floor and handcuffed.   Mr. Marquez asked Mr. Gomez if he was OK. Mr. Gomez responded that he would eventually be OK.

43.     But, as Mr. Gomez lay on the concrete handcuffed, Defendant John Doe 1 then cocked back his fist and punched Mr. Gomez on the right side of his face, causing Mr. Gomez's left side of his face to smash against the concrete floor.

44.     In pain, fearing further unprovoked and unjustified violence, and confused, Mr. Gomez asked Defendant John Doe 1 why he hit him and stated, in substance, that he "thought this only happened on television," to which Defendant John Doe 1 responded by punching Mr. Gomez again in the face, causing his face to hit against the ground again.

45.     The defendants then sat Mr. Gomez up.   Thereafter, Mr. Gomez asked the defendants if he could have his hat back, which was knocked off his head.  Defendant John Doe 2, a white NYPD officer in uniform, then put his boot over the hat and dragged it on the concrete away from Mr. Gomez.

46.     Mr. Gomez then asked the defendants if they would loosen up his handcuffs because they were too tight.  The defendants, however, refused to loosen them.

47.     Despite lacking probable cause, reasonable suspicion, and having no legal justification whatsoever, the defendants then transported Mr. Gomez and Mr. Marquez to an NYPD's 34th Precinct for imprisonment, where they remained falsely imprisoned.

48.     The defendants actively participated in falsely arresting Mr. Gomez and Mr. Marquez and failed to intervene to prevent the defendants, including, but not limited to, Defendants Thomas, Danca, Doe 1, and Doe 2, from unlawfully assaulting Mr. Gomez and Mr. Marquez.

7

49.     As a result of the defendants' assault upon him, Mr. Gomez suffered physical and mental injuries including, but not limited to, deep bruising of the left side and right side of his face; torn ligaments of the thumb requiring he be fitted for and wear a spica splint; elbow abrasions; head injury; swelling in and around his ribs, arm, and head; substantial pain; discomfort; physical and psychological distress; and further physical and psychological injuries yet to be revealed.

50.     As a result of the defendants' assault upon him, Mr. Marquez suffered physical and mental injuries including, but not limited to, a facial abrasion and contusion; mandibular contusion; substantial pain; discomfort; physical and psychological distress; and further physical and psychological injuries yet to be revealed.

51.     The defendants then transported Mr. Gomez from the 34th Precinct to the Manhattan Detention Complex for arraignment on the baseless charges filed under docket number 2015NY036333.   These charges were filed based upon the false allegations of Defendants Danca and Thomas.

52.     Likewise, the defendants transported Mr. Marquez from the 34th Precinct to the Manhattan Detention Complex for arraignment on the baseless charges filed under docket number 2015NY036332. These charges were filed based upon the false allegations of Defendant Danca.

53.     Defendants Danca and Thomas knowingly manufactured the underlying false allegations and forwarded this information to the District Attorney's Office knowing that it would be used against Mr. Gomez and Mr. Marquez at trial.   Defendant Danca falsely claimed, another other false allegations, that Mr. Marquez touched his chest and refused to comply with his orders to move, and then flailed his arms and resisted arrest.   Defendant Danca also falsely

claimed that Defendant Thomas observed Mr. Gomez attempt to grab Defendant Thomas's arm and that he (Mr. Gomez) flailed his arms and resisted arrest.

54.     On June 7, 2015, Mr. Gomez and Mr. Marquez were arraigned on the false charges of resisting arrest, disorderly conduct, and harassment.  Upon arraignment, the presiding Criminal Court judge released both Mr. Gomez and Mr. Marquez on their own recognizance.

55.     Prior to their release at arraignment, Mr. Gomez and Mr. Marquez each spent approximately fifteen (15) hours falsely imprisoned.

56.     Upon his release from custody, Mr. Gomez immediately sought medical attention for the injuries he sustained as a result of the defendants assaulting him, and he was admitted into the Emergency Room of the Robert Wood Johnson University Hospital, where he was diagnosed with facial and scalp contusions, lacerations and abrasions, head injury, and torn left thumb ligaments for which he was fitted with a spica splint, and prescribed anti-inflammatory drugs for his pain.

57.     Similarly, upon his release from custody, Mr. Marquez sought medical attention for the injuries he sustained as a result of the defendants assaulting him, and he was admitted into the Emergency Room of the Raritan Bay Medical Center, where he was diagnosed with a facial abrasion and contusion and a mandibular contusion, and prescribed pain relieving medicine as necessary and to apply ice to his injuries and bacitracin to his abrasions.

58.     The defendants arrested and initiated criminal proceedings against Mr. Gomez and Mr. Marquez despite their knowledge that they lacked probable cause, reasonable suspicion, or any justification whatsoever to do so.

59.     The defendants initiated this prosecution for the purpose of covering up their unlawful arrest and unjustified assault upon Mr. Gomez and Mr. Marquez.

60.     This false arrest, denial of Mr. Gomez's fair trial rights, and malicious prosecution compelled him to return to the New York County Criminal Court to face these false charges on at least two (2) occasions when, on October 6, 2015, the Criminal Court judge dismissed this malicious prosecution against Mr. Gomez outright.

61.     This false arrest, denial of Mr. Marquez's fair trial rights, and malicious prosecution compelled him to return to the New York County Criminal Court to face these false charges on at least one (1) occasions when, on August 10, 2015, the Criminal Court judge dismissed this malicious prosecution against Mr. Marquez outright.

62.     All of the events leading up to and culminating in Mr. Gomez and Mr. Marquez being subjected to excessive force, false arrest, denial of fair trial rights, and malicious prosecution occurred while other NYPD officers, including, but not limited to, the individually named defendants, either participated in or failed to intervene in the illegal conduct described herein despite having every opportunity to do so.

63.     All of these events occurred as a direct result of the unconstitutional policies, customs, or practices of Defendant CITY OF NEW YORK, including, but not limited to, the inadequate screening, hiring, retaining, training, promoting, compensating, disciplining, and supervising of its employees.

64.     The underlying application of excessive force, false arrest, denial of the right to fair trial, and malicious prosecution is not an isolated incident.  Defendant CITY OF NEW YORK is aware, from lawsuits, notices of claims, press accounts, and complaints filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK's Civilian Complaint Review Board, that many NYPD officers, including the defendants, abuse their authority and are insufficiently trained regarding the application of force in light of the facts and circumstances

confronting them in the course of citizen-police encounters and what constitutes probable cause for an arrest.

65.     Further, these officers routinely apply excessive force in the course of these encounters while their fellow police officers either actively participate in or fail to intervene to prevent this unconstitutional conduct; and, upon applying such force, these officers engage in falsification, including, but not limited to, charging victimized citizens with resisting arrest, harassment, and disorderly conduct.  See, e.g., Graham v. City of New York, 928 F. Supp. 2d 610 (E.D.N.Y. Mar. 6, 2013) (lawsuit against the City of New York and individual NYPD officers for the officers' use of excessive force and violation of civil rights); Rodriquez v. City of New York, 10 Civ. 9570 (PKC) (KNF), 2012 WL 1658303, at *1 (S.D.N.Y. May 10, 2012) (same); Tucker v. City of New York, 704 F. Supp. 2d 347 (S.D.N.Y. 2010) (same); Williams v. City of New York, 06-CV-6601 (NGG), 2009 WL 3254465, at *1 (E.D.N.Y. Oct. 6, 2009) (same); Stroe v. City of New York, 02 CV 1036 (RRM) (LB), 2008 WL 4513823, at *1 (E.D.N.Y. Sept. 26, 2008) (same). See also Ashley Southall & Marc Santora, Remembering a Man Whose Death Made Him a Symbol of a Divide: Mourners Demand Justice for Staten Island Man in Chokehold Case, N.Y. TIMES, July 23, 2014, http://www.nytimes.com/2014/07/24/nyregion/mans-dying-words-in-police-custody-become-rallying-cry-before-his-funeral.html?_r=0 ("'I can't breathe,' Eric Garner had said over and over again last Thursday after he was apparently placed in a chokehold by the police and wrestled to the ground, accused of illegally peddling cigarettes. . . .   The [NYPD] has banned the use of chokeholds since 1993.  In 1994, a Bronx man was killed by an officer using the grip.  Despite the ban, complaints of officers' using chokeholds have steadily come before the Civilian Complaint Review Board.  From 2009 to 2013, the board received 1,022 such complaints.");

Rocco Parascandola & Thomas Tracy, NYPD puts Brooklyn cop on desk duty for reportedly stomping on suspect who lay on ground, N.Y. DAILY NEWS, July 26, 2014, http://www.nydailynews.com/new-york/brooklyn/brooklyn-desk-duty-reportedly-stomping -man-article-1.1880818; ("A Brooklyn cop was put on modified assignment Friday after allegedly stomping on a suspect's head, authorities said.  NYPD Officer Joel Edouard, 36, had subdued Jahmil-El Cuffee on suspicion of marijuana possession on Malcolm X Blvd. in Bedford-Stuyvesant at 8 p.m. Wednesday – and then he booted the man as he lay on the ground, officials said."); Robert Gearty, Bronx man suing NYPD for excessive force for a rough arrest captured on cell phone video, N.Y. DAILY NEWS, Sep. 10, 2012, http://www.nydailynews.com/new-york/bronx/bronx-man-suing-nypd-excessive-force-rough-arrest-captured-cell-phone-video-article-1.1156308 (A Bronx man sued the City of New York and the individual NYPD officers for excessive force: "The video lasts about one minute and appears to show then 19-year-old Luis Solivan being pummeled in the face several times by one officer as the other cop pinned him down. . . . [T]he two officers chased Solivan into his home for no reason, pepper-sprayed him and beat him with their hands and a walkie-talkie.  Solivan's mother and two younger brothers were in the University Avenue apartment at the time.  After Solivan was hand-cuffed, he was kicked and his head was thrust into a wall so hard the impact left a hole . . . ."); Daniel Beekman, Man wins $2.5 million in lawsuit against NYPD cops over using excessive force, N.Y. DAILY NEWS, Dec. 19, 2013, http://www.nydailynews.com/new-york/man-wins-2-5m-suit-nypd-article-1.1552534 (The plaintiff sued the City of New York and the individual NYPD officers and the jury awarded him $2,500.000.00 in damages at trial because an NYPD officer "threw him down and kicked him in the knee," causing a ripped ligament and serious knee damage, simply because the plaintiff was watching a fight outside of a bar.); Kevin Deutsch, Lawyer for

12

drug suspect who was beaten by cops demands special prosecutor, N.Y. DAILY NEWS, Feb. 6,

2012, http://www.nydailynews.comnews/crime/lawyer-drug-suspect-beaten-cops-demands-

special-prosecutor article1.1018037#ixzz2vs7snZ6M (describing the case of Jateik Reed, who

was brutally assaulted by NYPD officers in the Bronx and the incident was captured on video).

See also NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "Bi-Annual Report, January -

June 2013 Report," http://www.nyc.gov/html/ccrb/downloads/pdfCCRBsemi2013_jan_June.pdf

("In the first half of 2013, excessive use of force was alleged in 55% of complaints compared to

49% in 2012 . . . ."); NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "2012 Annual

Report," http://www.nyc.gov/html/ccrb/downloads/pdf/ccrb_annual_2012.pdf ("In 2012, 50% of

all complaint contained one or more force allegations, compared to 48% in 2011.").

66.     Defendant CITY OF NEW YORK is further aware that such conduct and

improper training has often resulted in deprivations of civil rights.  Despite such notice,

Defendant CITY OF NEW YORK has failed to take corrective action.  This failure caused the

defendants to violate Plaintiffs' civil rights.

67.     Moreover, upon information and belief, Defendant CITY OF NEW YORK was

aware that, prior to this incident, the individual defendants lacked the objectivity, temperament,

maturity, discretion, and disposition to be employed as police officers.  Despite such notice,

Defendant CITY of NEW YORK has retained these officers and failed to adequately train,

supervise, and discipline them.

68.     As a result of the foregoing, Plaintiffs RAFAEL GOMEZ and HECTOR

MARQUEZ have sustained, among other damages, physical injuries, substantial pain, mental

injuries, emotional distress, embarrassment, and deprivation of their constitutional rights and

liberty.

## FEDERAL CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. § 1983)

69.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "68" with the same force and effect as if fully set forth herein.

70.     All of the aforementioned acts of the defendants, their agents, servants, and employees were carried out under the color of state law.

71.     All of the aforementioned acts deprived Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ of the rights, privileges, and immunities guaranteed to United States citizens by the Fourth and Fourteenth Amendments to the United States Constitution and were in violation of 42 U.S.C. § 1983.

72.     The individual defendants carried out these illegal acts in their capacity as police officers, with the entire actual and/or apparent authority attendant to their office.

73.     The individual defendants carried out these illegal acts in their capacity as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of the NYPD.

74.     The defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

75.     As a result, Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ are entitled to compensatory damages in amount to be fixed by a jury, and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

14

## AS AND FOR A SECOND CAUSE OF ACTION
### (False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

76.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "75" with the same force and effect as if fully set forth herein.

77.    The defendants arrested Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ without probable cause or legal privilege, causing them to be detained against their will for an extended period of time and subjected to physical restraints.

78.    The defendants caused Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ to be falsely arrested and unlawfully imprisoned, resulting in Plaintiffs being put in fear for their safety, humiliated, embarrassed, and deprived of their liberty.

79.    As a result, Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ are entitled to compensatory damages in amount to be fixed by a jury, and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Excessive Force under 42 U.S.C. § 1983)

80.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "79" with the same force and effect as if fully set forth herein.

81.    The defendants employed force against Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ that was excessive, objectively unreasonable, and in a clear violation of Plaintiffs' constitutional rights.

82.    At no time did Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ pose a threat to the safety of the defendants or anyone else, nor resist or attempt to evade arrest in anyway whatsoever.

83.     As a result of the defendants' conduct, Plaintiff RAFAEL GOMEZ was subjected to excessive force and suffered physical and mental injuries including, but not limited to, deep bruising of the left side and right side of his face; torn ligaments of the thumb requiring he be fitted for and wear a spica splint; elbow abrasions; head injury; swelling in and around his ribs, arm, and head; substantial pain; discomfort; physical and psychological distress; and further physical and psychological injuries yet to be revealed.

84.     As a result of the defendants' conduct, Plaintiff HECTOR MARQUEZ was subjected to excessive force and suffered physical and mental injuries including, but not limited to, a facial abrasion and contusion; mandibular contusion; substantial pain; discomfort; physical and psychological distress; and further physical and psychological injuries yet to be revealed.

85.     As a result, Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ are entitled to compensatory damages in amount to be fixed by a jury, and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A FOURTH CAUSE OF ACTION
#### (Denial of the Right to Fair Trial under 42 U.S.C. § 1983)

86.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "85" with the same force and effect as if fully set forth herein.

87.     The defendants falsified the information against Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ likely to influence a jury's decision and forwarded this false information to the District Attorney's Office for use in the underlying prosecution of Plaintiffs.

88.     The defendants caused Plaintiff RAFAEL GOMEZ to be prosecuted without any probable cause until all of the charges against him were dismissed outright on October 6, 2015.

89.     The defendants caused Plaintiff HECTOR MARQUEZ to be prosecuted without any probable cause until all of the charges against him were dismissed outright on August 10, 2015.

90.     As a result, Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ are entitled to compensatory damages in amount to be fixed by a jury, and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Malicious Prosecution under 42 U.S.C. § 1983)

91.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "90" with the same force and effect as if fully set forth herein.

92.     The defendants initiated, commenced, and continued a malicious prosecution against Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ.

93.     The defendants misrepresented and falsified the information that they presented to the District Attorney's Office in order to prosecute Plaintiffs.

94.     The defendants did not make a complete and full statement of facts to the District Attorney's Office in the underlying prosecution.

95.     The defendants caused Plaintiff RAFAEL GOMEZ to be prosecuted without any probable cause until all of the charges against him were dismissed outright on October 6, 2015, resulting in a favorable termination for Plaintiff.

96.     The defendants caused Plaintiff HECTOR MARQUEZ to be prosecuted without any probable cause until all of the charges against him were dismissed outright on August 10, 2015, resulting in a favorable termination for Plaintiff.

97.     As a result, Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ are entitled to compensatory damages in amount to be fixed by a jury, and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A SIXTH CAUSE OF ACTION
(Failure to Intervene under 42 U.S.C. § 1983)

98.     Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs numbered "1" through "97" with the same force and effect as if fully set forth herein.

99.     The defendants had an affirmative duty to intervene on behalf of Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ, whose constitutional rights were being violated in their presence by other officers, including the individual defendants.

100.     The defendants failed to intervene to prevent the unlawful conduct described herein despite having every opportunity to do so.

101.     As a result of the defendants' conduct, Plaintiff RAFAEL GOMEZ was subjected to excessive force; false arrest; denial of his right to a fair trial; his liberty was restricted for an extended period of time; he was put in fear for his safety; he was physically brutalized and in pain; and he was subjected to handcuffing; physical restraints; and ultimately an extended period of imprisonment.

102.     As a result of the defendants' conduct, Plaintiff HECTOR MARQUEZ was subjected to excessive force; false arrest; denial of his right to a fair trial; his liberty was restricted for an extended period of time; he was put in fear for his safety; he was physically brutalized and in pain; and he was subjected to handcuffing; physical restraints; and ultimately an extended period of imprisonment.

18

103.    As a result, Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ are entitled to compensatory damages in amount to be fixed by a jury, and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

104.    All of the foregoing acts of the defendants deprived Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ of federally protected rights, including, but not limited to, the right:

      A.     To be free from deprivation of civil rights and liberty;

      B.     To be free from false arrest/unlawful imprisonment;

      C.     To be from excessive force;

      D.     To be free from denial of the right to a fair trial;

      E.     To be free from malicious prosecution; and

      F.     To be free from the failure to intervene.

105.    As a result, Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ are entitled to compensatory damages in amount to be fixed by a jury, and are further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs RAFAEL GOMEZ and HECTOR MARQUEZ demand judgment and pray for the following relief, jointly and severally, against the defendants:

(A)    full and fair compensatory damages in an amount to be determined by a jury;

(B)    punitive damages against the individual defendants in an amount to be determined by a jury;

(C)    reasonable attorneys' fees and the costs and disbursements of this action; and

(D)     such other and further relief as the Court deems just and proper.


**Dated:** New York, New York
        March 31, 2016

                                        Respectfully submitted,

                                        **THE TRAINOR LAW FIRM, P.C.**
                                        26 Broadway, Suite 2100
                                        New York, New York 10004
                                        Tel:  (212) 323-7410
                                        Fax: (212) 323-7411


                                        By:     *Craig Trainor*
                                                CRAIG TRAINOR (CT 1823)

                                        Attorney for Plaintiffs RAFAEL GOMEZ
                                        and HECTOR MARQUEZ

20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RAFAEL GOMEZ and HECTOR MARQUEZ,

                                        Plaintiffs,

    -against-

CITY OF NEW YORK, LAWRENCE THOMAS, Individually, GREGORY DANCA, Individually, and JOHN DOE 1 through 5, Individually, (the names John Doe being fictitious, as the true names are presently unknown),

                                        Defendants.

---

                                                        16-CV-2377

# COMPLAINT

**THE TRAINOR LAW FIRM, P.C.**
Attorney for Plaintiff
26 Broadway, Suite 2100
New York, New York 10004